No. 25-_____

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

In re: AMERICAN OVERSIGHT,

*Petitioner.*

On Petition from the United States District Court
for the Southern District of Florida

No. 9:23-cr-80101-AMC

---

## PETITION FOR WRIT OF MANDAMUS

---

*/s/ Loree Stark*
Loree Stark
Daniel Martinez
Ronald Fein
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
loree.stark@americanoversight.org
danny.martinez@americanoversight.org
ron.fein@americanoversight.org

*Attorneys for Petitioner*

## Certificate of Interested Persons and
## Corporate Disclosure Statement

Pursuant to Eleventh Circuit Rule 26.1-1, counsel of record for American Oversight certifies that the following is a complete list of the trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

1.      American Oversight, Petitioner/Prospective Intervenor

2.      Blanche, Todd, counsel for Defendant and amicus curiae President Donald J. Trump

3.      Bove, Hon. Emil, counsel for former Defendant and amicus curiae President Donald J. Trump

4.      Cannon, Hon. Aileen, Judge of the United States District Court, Southern District of Florida

5.      Buckner, David M., counsel for Prospective Intervenor Knight Institute

6.      De Oliveira, Carlos, former Defendant

7.      Diakun, Anna, counsel for Prospective Intervenor Knight Institute

8.    Fein, Ronald, counsel for Petitioner/Prospective Intervenor American Oversight

9.    Haddix, Elizabeth, counsel for Petitioner/Prospective Intervenor American Oversight

10.    Irving, IV, John S., counsel for Defendant De Oliveira

11.    Jaffer, Jameel, counsel for Prospective Intervenor Knight Institute

12.    Klugh, Richard C., counsel for Defendant Waltine Nauta

13.    Knight First Amendment Institute, Prospective Intervenor

14.    Llanes, Barbara, counsel for Petitioner/Prospective Intervenor American Oversight in the below proceedings

15.    Martinez, Daniel, counsel for Petitioner/Prospective Intervenor American Oversight

16.    Murrell, Jr., Larry Donald, counsel for Defendant De Oliveira

17.    Nauta, Waltine, former Defendant

18.    Porter, Michael D., counsel for the United States of America

19.    Schachter, Adam, counsel for Petitioner/Prospective Intervenor American Oversight in the below proceedings

20.    Stark, Loree, counsel for Petitioner/Prospective Intervenor American Oversight

21.    Trump, President Donald J., former Defendant/amicus curiae

22.    United States Department of Justice

23.    Wharton, Kendra, counsel for Defendant and amicus curiae President

Donald J. Trump

24.    Wilkens, Scott, counsel for Prospective Intervenor Knight Institute

25.    Wilson, Jenny, counsel for Defendant Waltine Nauta

*/s/ Loree Stark*
Loree Stark
Daniel Martinez
Ronald Fein
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
loree.stark@americanoversight.org
danny.martinez@americanoversight.org
ron.fein@americanoversight.org

*Attorneys for Petitioner*

**Statement Regarding Oral Argument**

Because of the unusual nature of the injunction in the proceedings below and its impact on Petitioner's access to public records, Petitioner respectfully requests oral argument, which it believes will assist the Court in resolving the issues presented in this petition for writ of mandamus.

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ................. C1

Statement Regarding Oral Argument ........................................................................ i

Table of Contents ..................................................................................................... ii

Table of Citations .................................................................................................... iv

Relief Sought ............................................................................................................ 1

Jurisdictional Statement ........................................................................................... 1

Statement of the Issues ............................................................................................. 1

Statement of the Case ............................................................................................... 2

        A.     Parties in the District Court Proceeding .................................... 3

        B.     Prospective Intervenors in the District Court Proceeding .......... 4

        C.     The Special Counsel's Report ................................................... 4

        D.     Petitioner's FOIA Request and Subsequent Action in the United States District Court for the District of Columbia Against the Department of Justice to Compel Volume II of the Special Counsel's Report ....................................................................... 5

        E.     Relevant Proceedings in the Court Below ................................. 6

        F.     Standard or Scope of Review ................................................... 10

            1.     Petition for Writ of Mandamus ..................................... 10

            2.     Orders Restraining Dissemination of Information ......... 11

Reasons Why the Writ Should Issue ........................................................................ 11

     I.     Mandamus is the Appropriate Vehicle for Petitioner to Seek Its Requested Relief .................................................................................... 12

A.   Petitioner Has No Right to Appeal and Must Seek Mandamus to Remedy Impairment of Its Rights ......................................... 12

B.   Petitioner Has Standing to Seek Mandamus Relief ................. 13

    1.   Petitioner's Inability to Access a Public Record is an Injury That Would be Redressed by Vacatur of the Injunction ..................................................................... 14

    2.   Petitioner's Interest in Accessing Volume II is Within the Zone of Interests Protected Pursuant to Its Federal Rights ............................................................................ 14

        (a)   Petitioner Has a Federal Statutory Right to Access Public Records under FOIA ................................ 15

        (b)   Petitioner Has a Common Law Right of Access to Public Records ................................................... 15

        (c)   Petitioner Has a Constitutional Right of Access to Public Records ................................................... 18

II.   Petitioner Has a Clear and Indisputable Right to the Requested Relief .......................................................................................... 20

    A.   No Good Cause Exists to Sustain the January 21 Order. ......... 20

    B.   Invoking the District Court's Supervisory Powers to Extend the January 21 Order Beyond the Expiration of Live Criminal Appeals is an Abuse of Discretion. ......................................... 25

III.   There is No Other Remedy Available to American Oversight .......... 27

IV.   In the Alternative, this Court Should Compel the District Court to Issue a Ruling on Petitioner's Motion to Intervene ........................... 29

Conclusion ........................................................................................ 31

Certificate of Compliance with Rule 21(d) and 32(a) ............................ 32

## Table of Citations

**Page(s)**

**Cases**

*Absolute Activist Value Master Fund Ltd. v. Devine*,
  998 F.3d 1258 (11th Cir. 2021) ...........................................................28

*Alexander v. United States*,
  509 U.S. 544 (1993) ...........................................................................21

*Allied Chem. Corp. v. Daiflon, Inc.*,
  449 U.S. 33 (1980) .............................................................................11

*Am. Oversight v. U.S. Dep't of Justice*,
  No. 25-cv-383 (D.D.C. Feb. 10, 2025) .............................................5, 6

*Belo Broad. Corp. v. Clark*,
  654 F.2d 423 (5th Cir. 1981) ..............................................................11

*Boehm v. F.B.I.*,
  983 F. Supp. 2d 154 (D.D.C. 2013) ...................................................27

*CBS Inc. v. Young*,
  522 F.2d 234 (6th Cir. 1975) .........................................................12, 28

*Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*,
  263 F.3d 1304 (11th Cir. 2001) ..............................................15, 16, 25

*Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*,
  918 F.3d 1161(11th Cir. 2019) ...........................................................18

*Ctr. for Nat. Sec. Stud. v. U.S. Dep't of Just.*,
  331 F.3d 918 (D.C. Cir. 2003) ............................................................16

*Davis v. East Baton Rouge Parish School Bd.*,
  78 F.3d 920 (5th Cir.1996) .................................................................19

*Dow Jones & Co. v. Kaye*,
  90 F. Supp. 2d 1347 (S.D. Fla. 2000) ..............................18, 19, 22, 23

iv

*Elec. Priv. Info. Ctr. v. United States Dep. of Just.*,
    18 F.4th 712 (D.C. Cir. 2021) ...............................................................17

*FOCUS v. Allegheny County Court of Common Pleas*,
    75 F.3d 834 (3d Cir.1996) ....................................................................19

*In re Application of Dow Jones & Co.*,
    842 F.2d 603 (2d Cir.1988) ..................................................................19

*In re BayCare Med. Grp., Inc.*,
    101 F.4th 1287 (11th Cir. 2024)....................................................10, 11

*In re BellSouth Corp.*,
    334 F.3d 941 (11th Cir. 2003)..............................................................11

*In re Bennett*,
    136 F.3d 1279 (11th Cir. 1998)......................................................29, 30

*In re Bennett*,
    136 F.3d 1281 (11th Cir. 1998).............................................................30

*In re Blyden*,
    626 Fed. App'x 368 (3d Cir. 2015) ......................................................31

*In re Daker*,
    685 Fed. App'x 790 (11th Cir. 2017)...................................................29

*In re Futch*,
    2015 WL 1954063 (11th. Cir. Apr. 27, 2015)................................29, 30

*In re Lopez-Lukis*,
    113 F.3d 1187 (11th Cir. 1997).............................................................20

*In re Nat'l Prescription Opiate Litig.*,
    927 F.3d 919 (6th Cir. 2019)..........................................................11, 24

*In re Porter*,
    2023 WL 6182543 (11th Cir. July 25, 2023) .......................................30

*In re Subpoena to Testify Before Grand Jury Directed to Custodian of Recs.*,
 864 F.2d 1559 (11th Cir. 1989) ................................................................22

*In re The Wall St. J.*,
 601 F. App'x 215 (4th Cir. 2015) .........................................................12, 27, 28

*J. Pub. Co. v. Mechem*,
 801 F.2d 1233 (10th Cir. 1986) ..............................................................28

*Jackson v. Motel 6 Multipurpose, Inc.*,
 130 F.3d 999 (11th Cir. 1997) ...............................................................29

*John Doe Agency v. John Doe Corp.*,
 493 U.S. 146, (1989) ...........................................................................15

*Johnson v. Rogers*,
 917 F.2d 1283 (10th Cir. 1990) ..............................................................30

*Kaczmarek v. Rednour*,
 627 F.3d 586 (7th Cir. 2010) .................................................................29

*Kerr v. United States District Court for the Northern District of California*,
 426 U.S. 394 (1976) ...........................................................................20

*Locke v. Warren*,
 611 F. Supp. 3d 1375 (S.D. Fla. 2020) .................................................15, 16

*McCarthy v. Barnett Bank of Polk Cnty.*,
 876 F.2d 89 (11th Cir. 1989) ............................................................11, 16

*Nixon v. Warner Communications, Inc.*,
 435 U.S. 589 (1978) ....................................................................15, 16, 18

*N.Y. Times Co. v. U.S. Dep't of Just.*,
 No. 25-cv-562 (S.D.N.Y Jan. 21, 2025) .......................................................6

*Pansy v. Borough of Stroudsburg*,
 23 F.3d 772 (3d Cir. 1994) ...............................................................23, 24

*Payne Enters., Inc. v. United States*,
    837 F.2d 486 (D.C. Cir. 1988)....................................................................3

*Romero v. Drummond Co., Inc.*,
    480 F.3d 1234 (11th Cir. 2007)...............................................................18

*St. Hubert v. United States*,
    140 S. Ct. 1727......................................................................................29

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007).............................................................27

*Taylor v. Sturgell*,
    553 U.S. 880, (2008) .............................................................................15

*The News-J. Corp. v. Foxman*,
    939 F.2d 1499 (11th Cir. 1991)........................................................21, 22

*U.S. v. Gregory*,
    656 F.2d 1132 (5th Cir. 1981)...............................................................20

*U.S. v. Hasting*,
    461 U.S. 499 (1983) .............................................................................26

*U.S. v. Nauta*,
    No. 23-cr-80101-AMC (S.D. Fla. July 10, 2025) ................................30

*U.S. v. Noriega*,
    917 F.2d 1543 (11th Cir. 1990)......................................11, 12, 20, 27

*United States ex rel. Oberg v. Nelnet, Inc.*,
    105 F.4th 161 (4th Cir. 2024)................................................................20

*United States v. Fernandez-Toledo*,
    737 F.2d 912 (11th Cir.1984)...........................................................20, 31

*United States v. Gurney*,
    558 F.2d 1202 (5th Cir. 1977)..........................................................13, 14

*United States v. Shalhoub,*
  855 F.3d 1255 (11th Cir. 2017) ................................................................11

*United States v. Trump,*
  No. 23-cr-80101 (S.D. Fla. January 21, 2025) ................................2, 6, 7, 8, 9, 10

*United States v. Trump,*
  No. 24-12311 (11th Cir. 2025) ........................................................7, 8

*Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,*
  425 U.S. 748 (1976) ................................................................18

*Washington Legal Foundation v. U.S. Sentencing Commission,*
  89 F.3d 897 (D.C. Cir. 1996) ........................................................16, 17

**Statutes**

5 U.S.C. § 552 ................................................................2, 15, 17, 27

18 U.S.C.§ 3231 ................................................................1

28 U.S.C. § 1651(a) ................................................................1

Freedom of Information Act, Pub. L. No. 89-487, 80 Stat. 250 (July 4, 1966) ......15

**Regulations**

28 C.F.R. § 600.9(c) ................................................................9

**Rules**

Federal Rule of Criminal Procedure Rule 6(e) ........................................9, 17, 25, 27

Federal Rule of Criminal Procedure Rule 16 ........................................8, 25

S.D. Fla. L. R. 7.1(b)(4)(B) ........................................................10, 30

**Other Authorities**

Letter from Jack Smith, Special Couns., Dep't of Justice, to Merrick Garland, Att'y Gen., Dep't of Justice (Jan. 7, 2025), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf ............................................4

Off. of Inspector Gen., U.S. Dep't of Just., A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election (June 2018), https://oig.justice.gov/sites/default/files/reports/18-04.pdf ...................................................................................................18

*Read the Special Counsel's Report on the Trump Election Case*, N.Y. Times, Jan. 14, 2025, https://www.nytimes.com/interactive/2025/01/14/us/report-of-special-counsel-smith-volume-1-january-2025.html ........................................................5

U.S. Dep't of Justice, FBI Releases Documents in Hillary Clinton E-Mail Investigation (Sept. 2, 2016), https://www.fbi.gov/news/press-releases/fbi-releases-documents-in-hillary-clinton-e-mail-investigation ...............................17

**Relief Sought**

American Oversight respectfully requests this Court vacate the district court's
January 21, 2025 Order barring the government from releasing Volume II.

**Jurisdictional Statement**

The District Court had jurisdiction of the proceedings below pursuant to 18
U.S.C. § 3231. This Court has appellate jurisdiction to issue mandamus relief
pursuant to the All Writs Act, 28 U.S.C. § 1651(a), which provides that "all courts
established by Act of Congress may issue all writs necessary or appropriate in aid of
their respective jurisdictions and agreeable to the usages and principles of law."

**Statement of the Issues**

I.    Whether mandamus relief vacating the district court's order barring the
      release of Volume II is appropriate to enable Petitioner to exercise its
      federal rights to access and receive information.

II.   Whether an indefinite injunction barring the government, as a former party
      to a criminal matter, from disclosing otherwise public records—even after
      all criminal charges have been voluntarily dismissed—can be sustained.

III.  Whether the district court's invocation of its supervisory powers to extend
      the injunction barring the release of Volume II beyond the expiration of all
      appeals in the criminal case is an abuse of discretion requiring vacatur of
      the injunction.

IV.    Whether, in the alternative, mandamus is appropriate to compel the district

court to rule on petitioner's pending motions.

**Statement of the Case**

Petitioner American Oversight challenges an order issued by the district court

in *United States v. Trump*, Case No. 23-cr-80101 (S.D. Fla. January 21, 2025),

barring the federal government indefinitely from releasing former Special Counsel

Jack Smith's report detailing the Department of Justice's investigations into

allegations of President Trump's mishandling of a trove classified documents after

leaving office following his first term (Volume II). Volume II is of significant public

interest, and but for the Court's January 21, 2025 Order (January 21 Order)[1] barring

its release, would be subject to disclosure, absent redactions to protect properly

exempted information, under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552.

Petitioner has sought—to no avail—to vindicate its federal right of access to

Volume II by properly submitting a FOIA request, challenging the federal

government's withholding of the report in the United States District Court for the

---

[1] Although the district court noted the former defendants' motion was brought primarily to preclude imminent dissemination of the report by the government to select members of Congress "pending conclusion of criminal proceedings," Doc. 714 – Pg. 10, the order bars the government from releasing any portion of the report to *anyone* at *any point*, placing no express time limit on the duration of the injunction. *Id.* at 13-14.

District of Columbia, and requesting the court in the underlying proceedings to clarify that the injunction extinguished when its rationale (protecting the fair trial rights of the former defendants) did. Six months have passed since Petitioner sought relief with the district court, and the injury to Petitioner accrues with each passing day. *See Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("The fact that [Plaintiff] eventually obtained the information it sought provides scant comfort when stale information is of little value yet more costly than fresh information ought to be."). With no other options left to remedy the injury to its federal rights, Petitioner now requests this Court issue a writ of mandamus to vacate the January 21 Order.

### A.    Parties in the District Court Proceeding

Plaintiff the United States of America brought charges against three defendants following the return of a grand jury indictment.

Former defendant Donald J. Trump was the forty-fifth President of the United States and is the forty-seventh and current President of the United States.

Former defendant Waltine Nauta was a member of the United States Navy station as a valet in the White House during President Trump's first term and is the current director of White House Oval Office Operations.

Former defendant Carlos De Oliveira was an employee at Mar-a-Lago, President Trump's personal residence.

### B.    Prospective Intervenors in the District Court Proceeding

Petitioner American Oversight filed a motion to intervene in the proceedings below to clarify, or, in the alternative, seek dissolution of, the January 21 Order. Petitioner is a section 501(c)(3) organization primarily engaged in disseminating information to the public. Through research and FOIA requests—and subsequent analysis of the information it obtains—Petitioner educates the public about the activities and operations of the federal government through reports, published analyses, and other media.

The Knight First Amendment Institute at Columbia University (Knight Institute) also filed a motion to intervene in the proceedings below.

### C.    The Special Counsel's Report

On January 7, 2025, then-Special Counsel Jack Smith delivered to the Department of Justice (DOJ) the Special Counsel's Report, bifurcated into two volumes and reflecting his investigations into then President-elect Trump's potential interference with the lawful transfer of power following the 2020 election (Volume I) and allegations of mishandling classified documents (Volume II).[2] Smith provided a redacted version of Volume II to DOJ, noting that "consistent with Department

---

[2] Letter from Jack Smith, Special Couns., Dep't of Justice, to Merrick Garland, Att'y Gen., Dep't of Justice (Jan. 7, 2025) ("Smith Letter to Garland"), https://www.justice.gov/storage/Report-of-Special-Counsel-Smith-Volume-1-January-2025.pdf.

policy, Volume Two should not be publicly released while [the instant case] remains pending."[3] Volume I was released to the public on January 14, 2025.[4]

**D.    Petitioner's FOIA Request and Subsequent Action in the United States District Court for the District of Columbia Against the Department of Justice to Compel Volume II of the Special Counsel's Report**

On January 8, 2025, Petitioner submitted a FOIA request to DOJ, seeking expedited production of both volumes of the Special Counsel's report. Doc. 717 – Pg. 15. Following DOJ's failure to respond after applicable statutory deadlines passed, Petitioner filed a complaint and motion for preliminary injunction against DOJ in the United States District Court of the District of Columbia seeking relief under FOIA to compel production of Volume II. *See* Complaint, *Am. Oversight v. U.S. Dep't of Justice*, No. 25-cv-383 (D.D.C. Feb. 10, 2025), D.D.C. Doc. 1.[5] The day after American Oversight filed its motion, DOJ responded to the FOIA request, stating:

> At this time, I have determined that Volume II of the Report should be withheld in full because it is protected from disclosure by a court injunction issued by the United States District Court for the Southern District of Florida, West Palm Beach Division. In this instance, the

---

[3] *See* Smith Letter to Garland, *supra* n.2, at 4.

[4] *Read the Special Counsel's Report on the Trump Election Case*, N.Y. Times, Jan. 14, 2025, https://www.nytimes.com/interactive/2025/01/14/us/report-of-special-counsel-smith-volume-1-january-2025.html.

[5] To avoid confusion, Petitioner will refer to proceedings in any other case by identifying the venue prior to the docket number. When Petitioner refers to the below proceedings, it will only refer to the docket number.

Office of Information Policy lacks authority to consider the
releasability of this information under the FOIA.

Doc. 717 at 15.

The D.C. district court denied Petitioner's motion for preliminary injunction.
D.D.C. Doc. 10. The court ruled that "DOJ remains subject to Judge Cannon's
injunction 'barring disclosure' of Volume II, meaning that the agency has 'no
discretion' to release that document." D.D.C. Doc. 11 at 12 (internal citations
omitted). The court noted that "a preliminary injunction in a FOIA case [was] not
the proper way to challenge Judge Cannon's order," but that Petitioner must "argue
before Judge Cannon (and possibly the Eleventh Circuit) that the order is invalid or
should be dissolved." *Id.* at 14. The district court subsequently dismissed the
complaint on largely the same grounds. *Id.*, D.D.C. Doc. 20.

Separately, in late January 2025, the *New York Times* filed a lawsuit under
FOIA to compel DOJ to produce Volume II in the United States District Court for
the Southern District of New York. *See N.Y. Times Co. v. U.S. Dep't of Just.*, Case
No. 25-cv-562 (S.D.N.Y Jan. 21, 2025), S.D.N.Y. Doc. 1. On September 4, 2025,
the N.Y. district court dismissed the action, citing the January 21 Order and referring
to it as a "permanent injunction." *See* S.D.N.Y. Doc. 32.

### E.    Relevant Proceedings in the Court Below

On July 15, 2024, the district court entered an Order dismissing superseding
criminal indictments charging then-presidential nominee Donald Trump, Waltine

Nauta, and Carlos De Oliveira on multiple criminal offenses relating to alleged mishandling of classified national defense documents. Doc. 672. The government appealed the dismissal as to all defendants to this Court. Doc. 673. *See also* 11th Cir. Appeal No. 24-12311. On November 25, 2024, the government filed an unopposed motion to dismiss its appeal against then President-elect Trump. App. Doc. 79. This Court granted that motion and dismissed the appeal the following day, ending the case against then President-elect Trump. App. Doc. 81.

On January 6, 2025, Mr. Nauta and Mr. De Oliveira filed an emergency motion in the district court seeking to preclude the government from releasing the entirety of the Special Counsel's Report, based on reports that the Special Counsel intended to release the report to limited members of Congress for review. Doc. 679. Then-President-elect Trump filed a motion to intervene in Mr. Nauta and Mr. De Oliveira's motion for emergency relief. Doc. 681. On January 13, 2025, the district court denied the emergency motion as to Volume I, noting that Volume I was unrelated to the district court's proceedings and that the district court's ability to enforce its own orders "is . . . confined to this proceeding and to the remaining defendants in this proceeding." Doc No. 697 – Pgs. 2–3. The court temporarily enjoined the release of Volume II and requested further briefing and oral argument from the parties. *Id.* at 3. On January 21, 2025, the district court entered an order barring the government from releasing Volume II pursuant to the court's duty to

"safeguard the due process rights of the accused," stating Volume II "contains voluminous and detailed Rule 16 discovery about the allegations in this criminal case, which remains pending on appeal as to Defendants Nauta and De Oliveira." Doc. 714 – Pgs. 2–3. The January 21 Order contained no date on which the injunction would terminate. *Id.*

Eight days later, the government moved to voluntarily dismiss with prejudice its appeal as to Mr. Nauta and Mr. De Oliveira. App. Doc. 111. On February 11, 2025, the Eleventh Circuit granted the motion and dismissed the appeal. App. Doc. 113-2. The Order of Dismissal was docketed the same day, Doc. 716, which ended the criminal case.

Four days after Petitioner filed its complaint in the District Court for the District of Columbia and three days after the government dismissed the appeal as to Mr. Nauta and Mr. De Oliveira, Petitioner filed an expedited motion to intervene in the proceedings below, seeking clarification that the injunction barring the release of Volume II dissolved with the voluntary dismissal of appeal against the final two former defendants. Doc. 717. In the alternative, Petitioner requested the district court lift the injunction. *Id.*

On February 18, the court denied Petitioner's requested relief in part and reserved ruling in part, restating portions of the January 21 Order:

> In the Motion, non-party and prospective intervenor American
> Oversight seeks an order "clarifying" that the Court's January 21, 2025

8

Order "ceased to operate" upon conclusion of the Special Counsel's Appeal of the Court Order Granting Defendants' Motion to Dismiss Superseding Indictment. Alternatively, American Oversight requests an order "immediately lift[ing]" the Court's January 21 Order. Without ruling on the merits of the intervention or dissolution requests, the Court notes as follows. The Court's January 21, 2025, Order remains in effect per the clear terms of that Order, which states, in relevant part, as follows: "This Order remains in effect pending further Court order, limited as follows. No later than thirty days after full conclusion of all appellate proceedings in this action and/or any continued proceedings in this Court, whichever comes later, the parties shall submit a joint status report advising of their position on this Order, consistent with any remaining Rule 6(e) challenges or other claims or rights concerning Volume II, as permitted by law."

Doc. 718 (cleaned up). The district court stated it "sees an insufficient basis to warrant expedited or emergency treatment" of the Motion to Intervene. *Id.* It is unclear, given the language of the Minute Order, if the district court's denial pertained to the merits of the clarification request or solely to Petitioner's request for expedited briefing and consideration. *See id.* On February 24, 2025, the Knight Institute separately filed a motion to intervene, requesting the court treat Volume II as a judicial record and order its release. Doc. 721.

On March 14, 2025, the United States, Nauta and De Oliviera submitted a joint status report conveying their respective positions on the release of Volume II, pursuant to the January 21 Order. Doc. 738. Both parties took the position the court should not order release of the report, *id.* at 2, with the government stating it would be the "Attorney General's prerogative to determine whether the release of Volume II 'would be in the public interest[.]" *Id.* at 2 (citing 28 C.F.R. § 600.9(c)). Nauta

9

and De Oliviera—no longer defendants following the government's voluntary dismissal of its appeals at the Eleventh Circuit all criminal charges—asked the court not to release the report, asserting they "remained concerned that [FOIA] presents opportunities for mischief," *id.* at 4.

The same day, Nauta and De Oliveira opposed Petitioner's and the Knight First Amendment Institute's motions to intervene. Doc. 739. Ten days later, the government submitted opposition to the motions to intervene. Doc. 740. Petitioner filed its reply a week later, Doc. 746, and briefing was complete and the matter ripe for a decision on March 31, 2025.

On July 10, 2025, Petitioner submitted a notice to the district court stating there had not been a ruling, as required by the local rules of the Southern District of Florida for matters that have been pending with a district court for more than 90 days. *See* Doc. 751 (citing S.D. Fla. L. R. 7.1(b)(4)(B)).

Now more than 180 days after briefing concluded on Petitioner's motion, Petitioner files the instant petition.

## F.    Standard or Scope of Review

### 1.    Petition for Writ of Mandamus

The petitioner's right to mandamus must be "clear and indisputable," and the court considering issuance of the writ must be satisfied that it "is appropriate under

the circumstances." *In re BayCare Med. Grp., Inc.*, 101 F.4th 1287, 1290 (11th Cir. 2024) (quoting *United States v. Shalhoub*, 855 F.3d 1255, 1262–63 (11th Cir. 2017)).

### 2.    Orders Restraining Dissemination of Information

A court of appeals reviews a district court's order restricting dissemination of information under an abuse of discretion standard. *See, e.g.*, *U.S. v. Noriega*, 917 F.2d 1543, 1546 (11th Cir. 1990); *McCarthy v. Barnett Bank of Polk Cnty.*, 876 F.2d 89, 91–92 (11th Cir. 1989); *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 431 (5th Cir. 1981); *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 938 (6th Cir. 2019).

### Reasons Why the Writ Should Issue

A writ for mandamus will issue "'when exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy.'" *In re BellSouth Corp.*, 334 F.3d 941, 953 (11th Cir. 2003) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34–35 (1980)).

Exceptional circumstances exist here. The district court's January 21 Order provides no express date on which the injunction will dissolve, thereby barring indefinitely DOJ from complying with its statutory obligations under FOIA, even though the rationale underlying the Order extinguished when the criminal case against the former defendants ended. Because of the Order, the government refuses to release otherwise non-exempt portions of Volume II—a report prepared by a federal executive branch agency relating to events of significant public interest that

11

would ordinarily be subject to FOIA. At the time of this filing, Petitioner has properly asserted its federal rights to access Volume II in no fewer than three different forums and has been obstructed each time by the January 21 Order.

There is no legal justification to sustain the January 21 Order, and, without intervention from this Court, Petitioner is unable to vindicate its federal rights to access public information. For these reasons, as further demonstrated below, Petitioner respectfully requests this Court vacate the January 21 Order.

## I. Mandamus is the Appropriate Vehicle for Petitioner to Seek Its Requested Relief

### A. Petitioner Has No Right to Appeal and Must Seek Mandamus to Remedy Impairment of Its Rights

Mandamus is the appropriate vehicle for a petitioner to seek relief from a district court action from which it has no opportunity to appeal. *See, e.g.*, *Noriega*, 917 F.2d at 1546 (treating an appeal from an oral order against a news entity as a petition for a writ of mandamus to correct an abuse of discretion because the "case [was] not appealable in its current posture"); *In re The Wall St. J.*, 601 F. App'x 215, 218 (4th Cir. 2015); *CBS Inc. v. Young*, 522 F.2d 234, 237 (6th Cir. 1975) (finding "the petitioner's First Amendment rights were impaired and curtailed by the order" and that "it would be without remedy" absent mandamus).

Here, Petitioner has no right of appeal in the district court proceedings below. It was not a participant in those proceedings, and at the time it sought to intervene

and seek clarification that the January 21 Order had extinguished, all appeals had been voluntarily dismissed by the government and there was no longer any case or controversy pending before the court. Further, the district court has not ruled on Petitioner's motion to intervene, but it has clarified that the Order is still in effect. Because Petitioner was a nonparty to the proceedings below, mandamus is the appropriate vehicle for Petitioner to seek relief.

**B.     Petitioner Has Standing to Seek Mandamus Relief**

A petitioner must meet two requirements to establish Article III standing: (1) there must be a claim of injury in fact, and (2) the interest a petitioner seeks to protect must be "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *See United States v. Gurney*, 558 F.2d 1202, 1206 (5th Cir. 1977) (finding media have standing to challenge a district court's decisions regarding right of access rulings when they have "arguably suffered an injury with respect to newsgathering").

Here, Petitioner alleges a clear injury in fact because the January 21 Order precludes its right of access to the public record it seeks (or, at minimum, its right to have another court adjudicate that right of access under FOIA), and the interests Petitioner seeks to protect—its federal rights to access and receive information—are directly with the zone of interests of protected by the promise of its federal statutory, common law, and constitutional rights.

13

### 1.    Petitioner's Inability to Access a Public Record is an Injury That Would be Redressed by Vacatur of the Injunction

Petitioner has alleged an injury in fact. Through its work promoting accountability for public officials and ensuring government transparency, Petitioner routinely analyzes public records, many of which it receives pursuant to FOIA requests, and disseminates those records, along with explanatory and editorial content, to the public. Exhibit 1, Doc. 717, Haddix Decl.

Petitioner sought access to Volume II when it filed its FOIA request, and it was denied access to Volume II—the non-exempt portions of which would be public record—because of the district court's injunction. Therefore, Petitioner has alleged an injury in fact—its inability to obtain a public record under FOIA—that would be redressed by the relief it seeks now: this Court's vacatur of the January 21 Order.

### 2.    Petitioner's Interest in Accessing Volume II is Within the Zone of Interests Protected Pursuant to Its Federal Rights

Here, the interests Petitioner seeks to protect are "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *See Gurney*, 558 F.2d at 1206. Specifically, Petitioner has three federal rights that are impacted by the January 21 Order: a statutory right under FOIA, a common law right of access to public documents, and a constitutional right to receive information.

14

### (a)    Petitioner Has a Federal Statutory Right to Access Public Records under FOIA

Petitioner has a federal statutory right under FOIA to request and access non-exempt public records for which it properly submits requests. *See Taylor v. Sturgell*, 553 U.S. 880, 885 (2008) ("[FOIA] accords 'any person' a right to request any records held by a federal agency."); *see also* 5 U.S.C. § 552; Freedom of Information Act, Pub. L. No. 89-487, 80 Stat. 250 (July 4, 1966) (codifying Act's purpose to "clarify and protect the right of the public to information"). That is the interest that Petitioner seeks to protect through the relief it requests here. *See e.g.*, *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989) ("This Court repeatedly has stressed the fundamental principle of public access to Government documents that animates the FOIA.").

### (b)    Petitioner Has a Common Law Right of Access to Public Records

Petitioner also has a common law right of access to public documents. *See Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978) (finding it "clear," as a matter of federal common law, that there is a "right to inspect and copy public records and documents"). The right makes no distinction between media and the general public, *see Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001), and the party seeking access "need not establish any

proprietary interest in them," *Locke v. Warren*, 611 F. Supp. 3d 1375, 1381 (S.D. Fla. 2020) (citing *Nixon*, 435 U.S. at 589).

In determining whether the common law right of access applies, "federal courts traditionally distinguish between those items which may properly be considered public or judicial records and those that may not; the media and public presumptively have access to the former, but not to the latter." *Chicago Trib. Co.*, 263 F.3d at 1311. For example, there is generally no common law right of access to discovery material, as "these materials are neither public documents nor judicial records." *Id.* (citing *McCarthy v. Barnett Bank of Polk County,* 876 F.2d 89, 91 (11th Cir. 1989).[6]

The Eleventh Circuit has not adopted a strict definition of what is a "public record" in the common law right of access context, but D.C. Circuit case law is instructive. In *Washington Legal Foundation v. U.S. Sentencing Commission*, the Court defined a "public record" in the context of common law right of access as "a government document created and kept for the purpose of memorializing or

---

[6] Judicial opinions interpreting common law access to public documents typically focus on access to judicial records because courts have generally held that when a public record can be made available under FOIA, the statute preempts the common law right of access. *See, e.g.*, *Ctr. for Nat. Sec. Stud. v. U.S. Dep't of Just.*, 331 F.3d 918, 936 (D.C. Cir. 2003). That statutory preemption, however, does not *extinguish* the right; rather, it demonstrates Congress's recognition of the right's importance.

recording an official action, decision, statement, or other matter of legal significance, broadly conceived." 89 F.3d 897, 905 (D.C. Cir. 1996).

Volume II is not "discovery" material—it is a report prepared by an executive branch agency of the United States government. As the Special Counsel's final report on an investigation, it is a government document that "was created and kept for the purpose of memorializing or recording an official decision statement or other matter of legal significance." *See id.* And, although not dispositive on Volume II's status as a "public record," it is notable that previous Special Counsel reports have been considered "public records" under FOIA. *See, e.g.*, *Elec. Priv. Info. Ctr. v. United States Dep't of Just.*, 18 F.4th 712, 715 (D.C. Cir. 2021) (providing background on the public release of a redacted version of former Special Counsel Robert Mueller's investigative report following a lawsuit by the Electronic Privacy Center, including the unchallenged decision of the lower court to permit redaction of grand jury information pursuant to FOIA Exemption 3 and Criminal Rule of Procedure 6(e), and granting in part the lower court's decision to permit limited redactions based on law enforcement exemptions).[7]

---

[7] Furthermore, the federal government on its own routinely voluntarily releases documents and reports relating to investigations of national importance. *See e.g.*, U.S. Dep't of Just., FBI Releases Documents in Hillary Clinton E-Mail Investigation (Sept. 2, 2016), https://www.fbi.gov/news/press-releases/fbi-releases-documents-in-hillary-clinton-e-mail-investigation (making publicly available documents related to investigation into former Secretary of State Hillary Clinton's use of a personal e-mail server "in the interest of transparency and in response to numerous Freedom of

As with its statutory rights under FOIA, the interest that Petitioner seeks to protect through mandamus relief—access to public documents—is within the zone of interests that the common law right of access seeks to protect. *See Comm'r, Alabama Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1166 (11th Cir. 2019) ("Access to public and judicial records protects 'the citizen's desire to keep a watchful eye on the workings of public agencies'") (quoting *Nixon*, 435 U.S. at 597–98); *see also Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1246 (11th Cir. 2007) (finding that public interest in accountability and access are at the "heart of the interest protected by the right of access").

### (c)    Petitioner Has a Constitutional Right of Access to Public Records

Petitioner, like any member of the public, has a fundamental First Amendment right to receive information equivalent to that of the press. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 757 (1976); *see also Dow Jones & Co. v. Kaye*, 90 F. Supp. 2d 1347, 1359 (S.D. Fla. 2000),

---

Information Act (FOIA) requests," with "[a]ppropriate redactions" pertaining to "classified information or other material exempt from disclosure under FOIA"; *see also* Off. of Inspector Gen., U.S. Dep't of Just., A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election (June 2018), https://oig.justice.gov/sites/default/files/reports/18-04.pdf (publishing a 568-page report detailing the Office of the Inspector General's review of federal investigations into former Secretary Clinton's use of a private email server).

*order vacated*, *appeal dismissed*, 256 F.3d 1251 (11th Cir. 2001) (district court's order vacated for mootness by the Eleventh Circuit without reaching the lower court's First Amendment analysis).

To demonstrate an injury to its First Amendment right to receive information, a non-party to litigation must show that, but for the restraint on speech or dissemination of information, "the flow" of information would resume. *Dow Jones*, 90 F. Supp. 2d at 1360 (citing *Davis v. East Baton Rouge Parish School Bd.,* 78 F.3d 920, 926–27 (5th Cir. 1996); *FOCUS v. Allegheny County Court of Common Pleas,* 75 F.3d 834, 838–39 (3d Cir. 1996); *In re Application of Dow Jones & Co.,* 842 F.2d 603, 606–08 (2d Cir. 1988)). This can be the case even if all parties acquiesced to the restraint. *Id.*

Here, because of the January 21 Order enjoining the release of Volume II, DOJ denied Petitioner access to public information which Petitioner has a right to access. *See* Exhibit 1, Doc. 717, Haddix Decl. But for the continued injunction barring release of Volume II, "the flow" of information would resume.

Petitioner has claimed a clear injury in fact—the inability to access Volume II—and the interests it seeks to protect in providing a check on the government and its ability to receive public records are directly with the zone of interests of protected by the promise of its federal statutory, common law, and constitutional rights.

19

## II.    Petitioner Has a Clear and Indisputable Right to the Requested Relief

A petitioner seeking mandamus must demonstrate a "clear and indisputable" right to issuance of the writ. *See Noriega*, 917 F.2d at 1546 n.3; *see also U.S. v. Gregory*, 656 F.2d 1132, 1136 (5th Cir. 1981); *United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 174 (4th Cir. 2024). While mandamus is "an extraordinary remedy," it is available "to correct a clear abuse of discretion or usurpation of judicial power." *In re Lopez-Lukis*, 113 F.3d 1187, 1187 (11th Cir. 1997) (citations omitted); *United States v. Fernandez-Toledo,* 737 F.2d 912, 919 (11th Cir. 1984); *Kerr v. U.S. Dist. Ct. for N. Dist. California,* 426 U.S. 394, 403 (1976).

### A.    No Good Cause Exists to Sustain the January 21 Order.

Now that all appeals in the criminal case have expired, the continuation of the district court's January 21 Order cannot be sustained under even the barest level of review.

The district court in the below proceedings grounded its issuance of the January 21 Order in its "supervisory powers," and invoked the Federal Rule of Criminal Procedure's "good cause" requirement for issuing protective orders pertaining to the dissemination of discovery materials, *see* Doc. 714. But Volume II is not "discovery" material—rather, it is a report prepared by an executive branch

agency to summarize the Department of Justice's findings relating to the handling of classified documents.

Although the district court's purported basis for barring the release of Volume II was in part to shield from public eyes sensitive grand jury information or discovery information subject to a protective order, Doc. 714, it reaches much farther than that—it prohibits the government from fulfilling its FOIA obligations to provide requesters with non-exempt public information to which they are entitled. The Order operates as a prior restraint on one former trial participant—the government—by restraining it indefinitely from disseminating information. *See Alexander v. United States*, 509 U.S. 544, 550 (1993) ("Temporary restraining orders—*i.e.,* court orders that actually forbid speech activities—are classic examples of prior restraints.") (citations omitted).

The Eleventh Circuit has not clearly defined a standard for reviewing nonparty challenges to prior restraints in the form of injunctions restraining trial participants in criminal proceedings. However, in *News-Journal Corp. v. Foxman*, the Court considered the district court's dismissal of a challenge by third-party media entities to an order issued by a state court judge restricting all parties and counsel in the case from commenting publicly on the case through the pendency of a trial. 939 F.2d 1499, 1505 (11th Cir. 1991).

In determining whether The News-Journal had an adequate state forum in which to raise its claims, and whether the district court's consequent dismissal pursuant to the presence of *Younger* abstention concerns was appropriate, the Court weighed considerations of the News-Journal's right to attend the proceedings to gather information against the defendants' rights to a fair trial in the still-pending proceedings. *See id.* at 1516–16. The Court concluded that the district court's dismissal was proper, noting that the judge in the state court proceedings had concluded "there was no less restrictive means of safeguarding the defendants' Sixth Amendment rights." *See id.* at 1516.[8]

In *Dow Jones v. Kaye*, the Southern District of Florida considered a media challenge to a gag order entered by a state court judge prohibiting trial participants from discussing the case. *See* 90 F. Supp. 2d at 1359–60. The court characterized the gag order as "indefinite" because it did not have an expiration date, noting that the order was, "according to its terms, a permanent injunction that forever bars the

---

[8] The Eleventh Circuit has considered orders restricting dissemination of information in the context of denying access to a grand jury, but, unlike the record at issue here, those "proceedings are historically and presumptively secret," and "secrecy of grand jury proceedings is essential to maintaining the effectiveness of the grand jury." *See In re Subpoena to Testify Before Grand Jury Directed to Custodian of Recs.*, 864 F.2d 1559, 1562, 1564 (11th Cir. 1989) (upholding district court restriction on disclosing information during ongoing grand jury testimony but noting that if the order "prevent[ed] disclosure of documents prepared and assembled independent of the grand jury proceedings, however, such as . . . records compiled in the ordinary course of business, it would be too broad.").

litigants and their counsel from commenting on a significant case." *Id.* Because of the significant interests at stake, the district court noted when a court seeks to enjoin the speech of trial participants, it must "specifically find, based on the available evidence, that the fairness of the trial is seriously threatened by publicity and that nothing short of a gag order will suffice to protect the litigants' right to a fair trial." *Id.* (Citations omitted.)

On appeal, this Court did not reach the propriety of the gag order, but rather simply vacated the district court's order and dismissed the appeal, leaving the state court trial judge without jurisdiction to enforce the gag order. In doing so, this Court noted that "[a]lthough the gag order, on its face, makes no reference to when the gag order would expire, Florida law precludes Judge Kaye from enforcing the gag order now that he has no jurisdiction over the parties." 256 F.3d at 1251, 1254. Here, although the order at issue was entered in a federal criminal trial and not a state case, the same considerations apply, even more so because the appeals in the case have been dismissed, and there is no case and controversy before the district court.

Although the nature of the injunction in this case is unique, other circuits have considered prohibitions on dissemination of information and considered whether information would be available under FOIA or state open records acts. For example, in *Pansy v. Borough of Stroudsburg*, the Third Circuit considered a newspaper's challenge to a confidentiality order that barred its access to a settlement agreement

between the trial participants. 23 F.3d 772 (3d Cir. 1994). The court ultimately held that "where it is likely that information is accessible under a relevant freedom of information law, a strong presumption exists against granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information pursuant to the relevant freedom of information law." *Id* at 791.

Similarly, the Sixth Circuit found a protective order prohibiting public entities from disseminating drug reporting data pursuant to a state public records request during the pendency of complex multi-state litigation relating to the opioid crisis could not be sustained. *In re Nat'l Prescription Opiate Litig.*, 927 F.3d 919 (6th Cir. 2019). In determining that good cause did not exist to justify the prohibition on dissemination of information, the Sixth Circuit examined the scope of the protective order and noted that the government agency that had moved for the protective order had "never explained why it could not simply redact the portions of the . . . data that relate to this and other ongoing investigations." *Id.* at 937. The court found that "because the Protective Order in this case prevented any disclosure of any [relevant] data . . . and because this ban on disclosure would remain in effect in perpetuity, the [parties supporting the Order] face a high hurdle in demonstrating 'good cause' for these extreme restrictions," and the Order could not be sustained. *Id.*

Similarly, here, the district court's January 21 Order has no expiration date, and the court has explicitly stated it considers the Order to still be in effect, despite

24

no live case or controversy before it. Doc. 718. The Order restrains the government from releasing non-exempt Volume II materials that would otherwise be available under FOIA. The Order also fails to take into consideration that DOJ will be required to withhold sensitive materials in the report pursuant to Rule 6(e), and that non-exempt materials in Volume II could still be released without jeopardizing the (now former) Defendants' constitutional rights. The Order should be vacated.

**B.    Invoking the District Court's Supervisory Powers to Extend the January 21 Order Beyond the Expiration of Live Criminal Appeals is an Abuse of Discretion.**

A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous. *Chicago Trib.*, 263 F.3d at 1309.

Here, the district court abused its discretion and acted beyond the scope of its judicial authority when it failed to provide an expiration date for its order barring the dissemination of information that would otherwise be subject to full or partial release under FOIA (as opposed to private discovery information parties expected to never become public, and thus subject to a lower standard to sustain prolonged enjoinment)[9] when there was no longer a case or controversy. It further acted beyond

---

[9] As the district court noted, the January 21 Order is separate from the Rule 16(d)(1) Protective Order, Doc. 27, governing the exchange of discovery in this case.

the scope of its judicial authority when it continued to hold out the January 21 Order as enforceable after the expiration of live criminal appeals. Doc. 718.

When the district court entered the order precluding the release of Volume II, it did so pursuant to its "supervisory powers to remedy violations of recognized rights, to protect the integrity of the federal courts, and to deter illegal conduct by government officials." Doc. 714 at 7 (citation omitted). Such powers may enable a court to fulfill its "affirmative duty, triggered at the inception of a criminal proceeding, to safeguard the due process rights of the accused." *See id.* at 8. However, to the extent the Order once served as a "protective measure[] to ensure a fair trial and to minimize the effects of prejudicial pretrial publicity," *id.*, such protection was no longer warranted once there was no prospective trial before the district court.

Any potential prejudice to former defendants that led the district court to exercise its supervisory powers in entering the Order extinguished with this Court's dismissal of the criminal charges. Further, the limits on a court's supervisory power prohibit exercise of that power when more narrowly tailored options are available to deter violative conduct. *See U.S. v. Hasting*, 461 U.S. 499, 506 (1983). Here, continuation of the measure to safeguard due process interests—a full bar on the disclosure of Volume II—is not narrowly tailored. Instead, more targeted alternatives exist that would permit the disclosure of non-exempt materials included

26

in Volume II. Counsel at DOJ remain bound by the requirements of Federal Rule of Criminal Procedure Rule 6(e), and FOIA Exemption 3 permits a government agency to withhold material that is "'specifically exempted from disclosure by statute' so long as (1) the statute 'requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue,' and (2) the statute relied on was 'enacted after the date of enactment of the OPEN FOIA Act of 2009.'" *See Boehm v. F.B.I.*, 983 F. Supp. 2d 154, 157 (D.D.C. 2013) (quoting 5 U.S.C. § 552(b)(3)(A)(i), (b)(3)(B)). Rule 6(e) is one of the statutes covered by FOIA's Exemption 3. *Id.* (citing *Sussman v. U.S. Marshals Serv.,* 494 F.3d 1106, 1113 (D.C. Cir. 2007)). A vacatur of the injunction would simply mean that the materials in Volume II would be treated like any other materials in DOJ's possession and related to federal criminal cases: subject to appropriate Rule 6(e) withholdings via Exemption 3 of FOIA. The district court exceeded its supervisory authority; its failure to provide that the Order would extinguish when there were no live criminal appeals before it is an abuse of discretion.

## III.    There is No Other Remedy Available to American Oversight

As a non-party to the district court proceedings, Petitioner is unable to appeal the district court's entry of the January 21 Order. *See, e.g., Noriega*, 917 F.2d at 1546 (providing that mandamus is appropriate to correct an abuse of discretion when a petitioner is unable to appeal); *see also In re The Wall St. J.*, 601 F. App'x 215,

218 (4th Cir. 2015); *CBS Inc. v. Young*, 522 F.2d 234, 237 (6th Cir. 1975); *J. Pub. Co. v. Mechem*, 801 F.2d 1233, 1236 (10th Cir. 1986).

Pertinent to this Court's consideration of whether it should order the district court to rule on Petitioner's pending motions below instead of simply vacating the January 21 Order is this Court's decision in *Absolute Activist Value Master Fund Ltd. v. Devine,* 998 F.3d 1258, 1264 (11th Cir. 2021). There, the Court called into question the extent to which a district court may modify an injunction after a party voluntarily dismisses its claims. *Absolute Activist* examined a district court's jurisdiction after a voluntary dismissal in the context of civil litigation and the Federal Rules of Civil Procedure and determined the court could not modify a protective order after a voluntary dismissal. *Id.* However, *Absolute Activist* leaves open the question of whether a district court, following dismissal of claims by the government in a criminal case, would be similarly restricted, and how that precedent applies to non-party requests for access.

Here, the government voluntarily dismissed appeals against *all* former defendants, potentially leaving the district court without the power to modify its January 21 Order. If that is the case, Petitioner's only recourse to vindicate its rights is mandamus action by this Court to require vacatur of the Order.[10]

---

[10] Even if the district court has discretion to rule on Petitioner's motion, each day the injunction remains in effect impairs Petitioner's federal rights to access and obtain information.

**IV.   In the Alternative, this Court Should Compel the District Court to Issue a Ruling on Petitioner's Motion to Intervene**

A writ of mandamus is appropriate "when no other adequate means are available," see *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1004 (11th Cir. 1997) (citation omitted), including "when there has been unreasonable delay in rendering a decision." *In re Daker*, 685 Fed. App'x 790, 790 (11th Cir. 2017); *see also In re Futch*, Case No. 14–14955–D, 2015 WL 1954063 at *1 (11th. Cir. Apr. 27, 2015).

Here, Petitioner's motion is straightforward, unlike the habeas corpus mandamus petitions that are the frequent subject of cases in this Circuit and others. *See St. Hubert v. United States*, 140 S. Ct. 1727, 1727 (2020) (noting the hurdles that habeas petitioners face in the Eleventh Circuit); *Kaczmarek v. Rednour*, 627 F.3d 586, 594 n.3 (7th Cir. 2010) (noting that "habeas corpus law is subtle and intricate"). The motion asks the district court to permit Petitioner to intervene in a matter that relates to the core of its mission—seeking access to public records to disseminate to the public—and to clarify, lift, or dissolve the injunction. Many of the weighty due process considerations and complexities of criminal procedure that district courts must grapple with simply are not present.

In addition to the straightforward nature of Petitioner's motion, Circuit precedent and the district court's local rules establish that unreasonable delay in rendering a decision serves as a basis for mandamus petitions. *See In re Bennett*

("*Bennett I*"), 136 F.3d 1279, 1280 (11th Cir. 1998), *vacated as moot, In re Bennett*

("*Bennett II*"), 136 F.3d 1281 (11th Cir. 1998);[11] *see also In re Futch*, Case No. 14–

14955–D, 2015 WL 1954063, at *1 (11th. Cir. Apr. 27, 2015); *In re Porter*, Case

No. 23-11103, 2023 WL 6182543, at *1 (11th Cir. July 25, 2023) (citing *Johnson v.*

*Rogers*, 917 F.2d 1283 (10th Cir. 1990) for the proposition that a 14-month delay in

ruling on a habeas permission "for no other reason than docket congestion was

impermissible"). More than 180 days have passed since Petitioner's motion was

fully briefed.

Notably, the Southern District of Florida requires litigants to apprise the

district court of delay in adjudicating motions. The relevant rule states:

> [A]ny motion in a civil case or any post-conviction motion in a criminal
> case as to which the Court has conducted a hearing but has not entered
> an order or otherwise determined the motion or matter within ninety
> (90) days of the hearing, the movant, whether party or non-party, shall
> file and serve on all parties and any affected non-parties . . . a "Notice
> of Ninety Days Expiring[.]"

S.D. Fla. L. R. 7.1(b)(4)(B). Petitioner filed such a notice on July 10, 2025. *See*

Notification of Ninety Days Expiring Regarding American Oversight's Motion to

Intervene ("90-Day Notice"), *U.S. v. Nauta*, 23-cr-80101-AMC (S.D. Fla. July 10,

2025). Since that filing, the district court has taken no action on Petitioner's motion.

---

[11] The *Bennett* Court held that a two-year delay in a "relatively simple case for no
reason other than docket congestion" was impermissible. *Bennett I*, 136 F.3d at
1282. The district court ruled five days before the circuit court issued its opinion.
*Bennett II*, 136 F.3d at 1281.

Moreover, besides the Knight Institute's motion to intervene —which deals with the same issue—no other pending matters in this case exist. *See In re Blyden*, 626 Fed. App'x 368, 370 (3d Cir. 2015) (noting that "the pendency of more pressing matters related to [the petitioner's] personal liberty" might explain why the petitioner's motion was delayed). The more than six-month delay is unreasonable under these circumstances.

Finally, if this Court declines to vacate the injunction, no other remedy exists for Petitioner's requested relief other than directing the district court to rule on Petitioner's motion. *See United States v. Fernandez-Toledo*, 737 F.2d 912, 919 (11th Cir. 1984). If this Court determines that the district court has jurisdiction to modify the injunction, mandamus is appropriate to require that the district court exercise its discretion.

## Conclusion

For the foregoing reasons, Petitioner respectfully requests this Court vacate the January 21, 2025 Order.

> */s/ Loree Stark*
> Loree Stark
> Daniel Martinez
> Ronald Fein
> AMERICAN OVERSIGHT
> 1030 15th Street NW, B255
> Washington, DC 20005
> Tel: (304) 913-6114

loree.stark@americanoversight.org
danny.martinez@americanoversight.org
ron.fein@americanoversight.org

*Attorneys for Petitioner*

## Certificate of Compliance with Rule 21(d) and 32(a)

I certify that this petition complies with the word limitation requirements of Fed. R. App. P. 21(d)(1) because this petition contains 7,584 words, excluding the parts of the document exempted by Fed R. App. P. 32(f), and it complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

*/s/ Loree Stark*
Loree Stark
Daniel Martinez
Ronald Fein
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
Tel: (304) 913-6114
loree.stark@americanoversight.org
danny.martinez@americanoversight.org
ron.fein@americanoversight.org

*Attorneys for Petitioner*